CENTRAL BOCA CHICA, INC., Plaintiff and Appellee, v. TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 7783. Argued November 7, 1938.—Decided November 17, 1938.

B. *Fernández García, Attorney General,* and *Vicente Palés Matos, Deputy Attorney General,* for appellant. *Vicente Zayas Pizarro* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

As shown by the pleadings, the facts in this case may be summarized as follows: That Central Boca Chica, Inc., for the purpose of insuring its workmen during the fiscal year 1932–33, applied for and obtained from the Industrial Com-

mission on October 25, 1932, policy No. 8294, having agreed with the insurance assessor of the Industrial Commission, Mr. José G. Salgado, that the quota or premium would be paid in monthly installments commencing on October 31, 1932. That the plaintiff tended the first installment of the premium, amounting to $900, but the Treasurer of Puerto Rico demanded that the premium be paid quarterly in advance, and in accordance with that ruling returned to the plaintiff the check No. 7576 issued by plaintiff in favor of the Treasurer of Puerto Rico for the aforesaid sum of $900. That the situation remained the same until April 13, 1933, when, Central Boca Chica having passed into the hands of Wirshing & Co., *S. en C.*, application was made for insurance in the State Fund until June 30 of that year, which was done by payment of the corresponding premium. That the defendant refused all offers of the plaintiff to pay the premium in monthly installments, and that on April 13, 1933, the defendant also refused to accept from plaintiff payment of the whole premium, with interest and surcharges, the position taken by the Treasurer being that by plaintiff's failure to pay its quota or premium in advance, it had become an uninsured employer and was obliged to pay not only the premium payable by an insured employer, but also the indemnities and penalties imposed by the statute upon all uninsured employers. Following out his view, the Treasurer of Puerto Rico, through the collector of internal revenue, attached personal property of the plaintiff for the collection of $6,106.80, which includes the quota or premium plus surcharges and costs of attachment, collecting furthermore the sum of $10,086.50, which represents the various awards for labor accidents allowed and paid to various workmen employed by plaintiff during the period from October 14, 1932, to April 13, 1933. This sum includes also expenses of liquidation and surcharges. Notices of attachment were opportunely served on plaintiff, and the proper demands for payment of these liquidations were made by the Industrial Commission.

The essential facts of the two supplemental amended complaints are substantially admitted by the defendant. The parties disagree as to the legal effect of the facts. Plaintiff urges that policy No. 8294 was valid and that Mr. José G. Salgado, the insurance assessor of the Government, was authorized to agree to the payment of the premium in monthly installments, while defendant contends that the policy had no legal existence and that Mr. Salgado was not empowered to make the agreement contended for by plaintiff. In any event, the Treasurer of Puerto Rico rejected the policy and returned the first payment which plaintiff sought to make, and the policy No. 8294 in question was thus left without effect.

The lower court correctly stated the point in controversy when in its opinion it set out the problem in the following terms:

"The question of law to be decided in this suit is as follows:

· "Whether an *uninsured* employer, in addition to paying the awards to his employees for accidents occurring during the time when *he was not insured,* must also pay to the Treasurer of Puerto Rico the quota or premium for an insurance policy covering the same period of time during which the employer was not insured and during which the accidents occurred for which he has paid awards."

After an analysis and comparison of the different sections of Act No. 85 of 1928 (Session Laws, p. 584) believed to be applicable, and after citing section 1043 of the Civil Code (1930 ed.), the trial court reached the following conclusion:

"That Central Boca Chica, Inc., was not required by any provision of Act No. 85 of 1928 to pay a quota or premium for the period of time during which it was an uninsured employer, that is, for the period from October 14, 1932, to April 13, 1933, and therefore the entire sum of $6,016.79 paid under protest by Central Boca Chica, Inc., to the Treasurer of Puerto Rico, appearing from receipt No. 334 of January 29, 1934, must be returned by the defendant to the plaintiff, together with interest thereon at the rate of 6 per cent per annum from the date on which the complaint was filed in this

court, that is, from October 2, 1934 (section 3 of Act No. 8 of April 19, 1927)."

Following the conclusion above quoted, judgment was entered adjudging the Treasurer of Puerto Rico to return to Wirshing & Co., *S. en C.,* as successors to all the rights and actions of the original plaintiff Central Boca Chica, Inc., the sum of $6,016.79 paid under protest by the latter company on January 29, 1934, together with interest thereon at the rate of 6 per cent per annum from the filing of the original complaint on October 2, 1934, without special imposition of costs.

Both parties have appealed from that judgment. Plaintiff has now moved in two successive motions which we shall consider together, to dismiss the defendant's appeal on the following grounds:

1. Because the defendant did not adopt either the method of a transcript of the evidence or that of a bill of exceptions and statement of the case for the purpose of bringing before this court the evidence which the trial court had before it; nor has defendant agreed with plaintiff to use the transcript of evidence which it is intended to present in this case, defendant not having therefore in any way brought up to this court the evidence presented in the lower court.

2. Because the defendant's appeal is frivolous, and

3. Because no brief has been filed within the time provided by the rules of this court.

Both of plaintiff's motions were set for hearing, and both parties appeared on the 7th of the present month and argued orally in support of their respective contentions.

We shall consider separately in the order set forth the grounds for dismissal urged by appellee.

In making a summary of the pleadings we have set out the facts appearing therefrom and have stated that defendant has in substance admitted the essential allegations of the complaint, leaving for us to decide, as did the judge

of the lower court, the question as to whether an *uninsured* employer, in addition to paying the awards to his employees for accidents occurring *during the time when he was not insured,* must also pay the quota or premium for an insurance policy covering the same period of time during which the employer was not insured and during which the accidents occurred for which he has paid awards. In other words, whether an uninsured employer may be regarded as a self-insurer for the period during which no policy was in force.

The whole controversy is reduced to a question of law. Since it appears from plaintiff's own pleadings that the Treasurer rejected policy No. 8294 and refused to accept, and in fact did not accept, the monthly payments tendered by plaintiff, it is clear that plaintiff was an uninsured employer during the period from October 14, 1932, to April 13, 1933, as we shall see further on in considering the second ground for dismissal. This being so, we do not need to have before us for a complete determination and disposition of this case, the evidence before the trial court.

The first ground for dismissal is, therefore, without merit. Let us now turn to the second.

■ Defendant's appeal is not frivolous. This is shown by section 36 of Act No. 85 of May 14, 1928, *supra,* which provides:

"Section 36.—The Superintendent of Insurance shall direct an attachment of the property of any employer who fails to fulfill his obligation of insuring his workmen for an amount sufficient to cover the sum of such compensation as may be determined by the Commission. Said attachment shall be effective *until the employer shows that he has performed his duty of insuring and until the liability contracted by him with his workmen during the time he was uninsured has been liquidated, or until he secures payment of such liability* to the satisfaction of the Superintendent of Insurance. Said attachment shall be levied as if it were a case of collection of taxes and shall be made effective in the same manner as when final judgment has been rendered in the case; and as regards the attached

property it shall have the priority granted by the Civil Code to insurance premiums." (Italics ours.)

In accordance with the provisions above quoted, the attachment directed to be made by the Superintendent of Insurance shall be effective until the employer shows: (*a*) that he has performed his duty of insuring (which plaintiff did in paying under protest the sum of $6,016.79), and (*b*) that the liability contracted by the employer with his workmen during the time he was uninsured has been liquidated or that the liabilities referred to in clause (*b*) above noted have been secured to the satisfaction of the Superintendent of Insurance.

It seems evident that if an uninsured employer is not required to pay the quota or premium provided by his policy throughout the period during which he has paid awards to his employees as an uninsured employer, the result would be then that we would be granting to the employer the right to be his own insurer during such time, without compliance on his part with the requirements of the statute for self-insurers.

Plaintiff requests us in its brief not to enter into a consideration of the merits of the case in deciding the question of frivolousness raised by plaintiff, but it is impossible to determine whether an appeal is frivolous or not without at least a slight consideration of the merits of the case. We limit ourselves, therefore, in order not to prejudge plaintiff's appeal, to pointing out section 36 above, so that our reasons may thus appear for believing that defendant's appeal is not entirely frivolous as plaintiff contends.

█ It is true, as plaintiff urges, that defendant's brief was not filed until the very day set for the hearing on the motions to dismiss. Regarding this point Rule 60 of this court provides:

"Upon failure of the appellant to comply with any of these rules imposing any duty or requirement on him, or with the law, the Court may, on any day, dismiss the appeal upon its own motion or, after notice to the appellant, upon motion of the appellee."

832

It is readily apparent that Rule 60 above quoted, authorizing the dismissal of an appeal when the appellant does not file his brief within the prescribed time, is in the nature of a warning rather than of a command. This being so, it is within the discretion of this court to deny a motion to dismiss on this ground when in its judgment the ends of justice will be furthered by a hearing of the case on the merits. We have seen that the appeal is not frivolous, that the amount in controversy exceeds $6,000, and that the case, as appears from the opinion of the trial judge, with whom we agree on this point, is of importance. Since defendant filed his brief on the day of the hearing on the motions to dismiss, and since plaintiff has suffered no prejudice whatever by defendant's failure to file his brief, we believe that we are making wise use of our discretion in denying the motion to dismiss on this ground as well.

Plaintiff's motion to dismiss must therefore be denied, without prejudice to a more careful consideration of the legal questions involved when we decide the case on the merits.

Mr. Chief Justice Del Toro took no part in the decision of this case.